UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATHLEEN K.,

                Plaintiff,

       v.                                         **DECISION AND ORDER**
                                                                                    19-CV-361S

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

        1.        Plaintiff Kathleen K.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff filed an application for disability insurance benefits ("DIB") under Title II of the Act on May 26, 2015. (R.[2] at 198.) Plaintiff alleged disability beginning on April 12, 2011, due to lumbar degenerative disc disease, lumbar radiculitis, herniated lumbar disc, status post fusion of L3-S1, depression, and anxiety. (R. at 238.) Plaintiff's application was denied. Plaintiff requested a hearing on the denial of her DIB claim before an administrative law judge ("ALJ"). ALJ Rosanne Dummer held a hearing on November 1, 2017, at which Plaintiff, represented by her attorney, appeared and testified. (R. at 60-93.) Vocational Expert Bridgett Collins also appeared and testified by telephone. At the time of the hearing, Plaintiff was 36 years old, with a college education and prior work

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify plaintiff by her first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

experience as a social worker, housing manager, and independent living skills trainer. (R. at 62-64, 235.)

3. The ALJ considered the case de novo and, on January 18, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 36-52.) On January 17, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on March 18, 2019, challenging the Commissioner's final decision.[3]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 5, 8.) Plaintiff filed a response on November 15, 2019 (Docket No. 10), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where

---

[3] The ALJ's January 18, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not,

3

>the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.  Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.  The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since her alleged onset date of April 12, 2011. (R. at 38.) At step two, the ALJ

4

found that Plaintiff has the following severe impairments: osteoarthritis of the bilateral knees (more prominent on the right), status-post January 2017 right knee arthroscopic surgery, cervical degenerative disc disease, obesity, status-post April 2011 lumbar discectomy and fusion, and status-post May 2012 lumbar discectomy and fusion. (R. at 39.)

11. At step three, the ALJ found that during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(c)). (R. at 40.)

12. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work. She could:

> lift/carry up to ten pounds frequently; sit six of eight hours, two hours at a time; stand two of eight hours, thirty minutes at a time; and walk two of eight hours, thirty minutes at a time. She could occasionally reach overhead; she could frequently reach in other directions and frequently push/pull. [She] could occasionally operate foot controls, … occasionally climb ramp/stairs, balance, and stoop. She should avoid unprotected heights, ladders/scaffolds, and should not kneel, crouch, or crawl. [She] could occasionally operate a motor vehicle and occasionally work with moving mechanical parts; she could occasionally tolerate humidity and wetness, pulmonary irritants, extremes of heat/cold, and vibration. She could tolerate loud (heavy traffic) noise.

(R. at 40-41.)

13. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 50.) At step five, the ALJ found that there was a significant number of jobs in the national economy that Plaintiff could perform. (Id.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 51.)

14.     Plaintiff first argues that the Appeals Council erred by failing to give good reasons for rejecting opinions of five treating physicians that she submitted after the ALJ issued her decision. Defendant argues that, because none of these had a likelihood of leading to a different outcome, the Appeals Council was not obliged to consider them nor to give good reasons for rejecting them.

15.     The Appeals Council will review a case when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.967 (a)(5). A plaintiff submitting evidence to the Appeals Council must also demonstrate "good cause" for not informing the Commissioner of the information earlier. 20 C.F.R. § 404.970.

16.     Some circuits have held that the Appeals Council does not need to discuss new evidence submitted to it when it denies a request for review. See, e.g. Mitchell v. Comm'r, 771 F.3d 780, 783-85 (11th Cir. 2014); Meyer v. Astrue, 662 F.3d 700, 702 (4th Cir. 2011);; Taylor v. Comm'r, 659 F.3d 1228, 1232 (9th Cir. 2011); Martinez v. Barnhart, 444 F.3d 1201, 1207 (10th Cir. 2006); Higginbotham v. Barnhart, 405 F.3d 332, 335 n.1 (5th Cir. 2005). The Second Circuit, on the other hand, has suggested that the treating physician rule applies to opinions submitted both to the ALJ and to the Appeals Council. See Newbury v. Astrue, 321 F. App'x 16, 17–18 (2d Cir. 2009) (holding, of evidence submitted only to the Appeals Council, that plaintiff was "entitled to express consideration of Dr. Grace's April 23, 2004 and December 3, 2004 opinions, a statement of the weight given to these opinions, and good reasons for the ALJ's decision").

17.     The treating physician rule provides that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). When the Commissioner declines to give controlling weight to the opinion of a treating physician, he or she must determine how much weight, if any, to give it. In doing so, he or she must consider the following, nonexclusive "Burgess factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing Burgess, 537 F.3d at 129).

18.     District courts in this circuit frequently find that the Appeals Council errs when it fails to apply the treating physician rule to new evidence from a claimant's treating physician. See, e.g., Durrant v. Berryhill, No. 16-CV-6781-FPG, 2018 WL 1417311, at *4 (W.D.N.Y. Mar. 22, 2018) ("At the very least, the treating physician rule required the Appeals Council to give good reasons for neglecting the new opinions."); Hollinsworth v. Colvin, No. 15-CV-543-FPG, 2016 WL 5844298, at *3–4 (W.D.N.Y. Oct. 6, 2016); Judge v. Comm'r of Soc. Sec., No. 12-CV-482 GLS/VEB, 2013 WL 785522, at *5–7 (N.D.N.Y. Feb. 1, 2013), report and recommendation adopted, No. 5:12-CV-482 GLS/VEB, 2013 WL 785641 (N.D.N.Y. Mar. 1, 2013) ("the Appeals Council was obligated to provide an explanation for its decision not to afford controlling weight to an assessment provided by Plaintiff's treating physician"); Knepple–Hodyno v. Astrue, No. 11–cv–443, 2012 WL

3930442, at *9 (E.D.N.Y. Sep't 10, 2012) (remanding for further proceedings because the "Appeals Council provided no explanation as to why it did not give ... new evidence controlling weight"); Shrack v. Astrue, No. 3:08–CV–00168, 2009 WL 712362, at *3 (D. Conn. Mar. 17, 2009) ("[T]he treating physician rule applies to the Appeal's [sic] Council when the new evidence at issue reflects the findings and opinions of a treating physician."); Stadler v. Barnhart, 464 F.Supp.2d 183, 188 (W.D.N.Y. 2006) (concluding that the Appeals Council erred by "fail[ing] to follow the requirements of the Commissioner's regulation in summarily concluding, without 'good reasons' stated, that the new evidence submitted by plaintiff's counsel to it was insufficient to disturb the ALJ's determination"); Farina v. Barnhart, No. 04–CV–1299 (JG), 2005 WL 91308, at *5 (E.D.N.Y. Jan.18, 2005) (remanding for further proceedings where the Appeals Council failed to "provide the type of explanation required under the treating physician rule" when denying review)).

19. Here, Plaintiff was treated during the relevant period by all of the doctors who later provided opinion evidence to the Appeals Council. Dr. Martinez, a rheumatologist, diagnosed her with "moderately severe" fibromyalgia on February 16, 2017. (R. at 985.) On exam when he began treating her, he noted 10 pairs of tender trigger points, an irritable right knee and left shoulder, and lumbar spine limitations. (R. at 984.)

20. Orthopedist Dr. Cameron Huckell treated Plaintiff for back problems throughout the period of alleged disability. (R. at 739-46, 752-828, 849-70, 875-80, 896-900, 905-925, 1048-99.) He performed lumbar spine surgeries on Plaintiff on April 13, 2011, and May 2, 2012. (R. at 322-23, 330-33.)

21. Psychiatrist Dr. Wendy Weinstein treated Plaintiff throughout the period of her alleged disability. (R. at 457-91, 1038-47.) She diagnosed Plaintiff with major depression, recurrent, and history of posttraumatic stress disorder. (R. at 491.)

22. Dr. Bernard Beaupin treated Plaintiff monthly for pain medication management. (R. at 340-410, 440-44, 492-555, 829-48, 881-95, 901-04, 952-71, 993-1037.) Orthopedic surgeon Dr. Marcus Romanowski treated Plaintiff for her knee and hip complaints from 2016 on. (R. at 930-51.) He performed right knee arthroscopic surgery on January 11, 2017 (R. at 942.)

23. The ALJ considered Plaintiff's treatment records but concluded that there was not evidence of work-preclusive limitations in the record. (R. at 46.) After the ALJ issued its negative decision, Plaintiff submitted 5 opinions by the above-mentioned treating physicians in support of her request for Appeals Council review. In a March 1, 2018, opinion, Dr. Martinez opined that Plaintiff could sit for less than 2 hours, stand/walk for less than 2 hours, lift and/or carry 10 pounds frequently, and would be absent from work 3 times a month. (R. at 28-29.) On March 1, 2018, Dr. Romanowski opined that Plaintiff could sit for less than 2 hours, stand or walk for less than 2 hours in an 8-hour workday, and could lift or carry 10 pounds frequently. He opined that her conditions would cause her to be absent from work more than 3 times a month. (R. at 28.) Dr. Beaupin opined that Plaintiff could sit for less than 2 hours and stand or walk for less than 2 hours; that she could lift or carry less than 10 pounds occasionally, was limited in bending, twisting and climbing, and her conditions would cause her to be absent from work more than 3 times a month. (R. at 27.) In an exam note from March 8, 2018, Dr. Huckell noted positive straight leg raise, slight right foot drop, reduced range of lumbar motion, and that

9

Plaintiff was developing a junction syndrome at L2-L3. (R. at 24.) He opined that Plaintiff could not lift more than 10 pounds, should avoid prolonged sitting more than 20 minutes or standing/walking for more than 15 minutes without a break. (Id.) He also limited her to a 4-hour workday. (Id.) In a questionnaire, Dr. Huckell further opined that Plaintiff's conditions would cause her to be absent from work 2-3 times per month. (R. at 17.) Psychiatrist Dr. Weinstein also completed a questionnaire on April 11, 2018. (R. at 11-14.) In it she opined that Plaintiff had marked difficulties in maintaining social functioning, and in concentration, persistence or pace, and moderate restrictions in her activities of daily living. She further opined that Plaintiff would experience three episodes of decompensation per year, each lasting more than 2 weeks. Dr. Weinstein opined that Plaintiff's impairments would cause her to be absent from work more than 4 days per month. (R. at 11.)

    24.    The Appeals Council, in its denial of review, found that the new evidence did not show a reasonable probability that it would change the outcome of the decision. (R. at 2.) It did not provide any further discussion of the new evidence. Defendant points to the many ways in which these opinions are inconsistent with the practitioners' treatment notes. This Court does not disagree, particularly with regard to Dr. Weinstein's opinion that Plaintiff was likely to suffer three two-week episodes of decompensation per year. (See R. at 11.) However, it is not for Defendant, nor for this Court, to perform a post-hoc rationalization of the evidence. The Appeals Council, in assessing these opinions, was required to give good reasons for the weight it gave them. Each of these physicians was a specialist, and each regularly treated Plaintiff. The treating physician rule required the Appeals Council to consider these factors, and to discuss the consistency of the new

opinions with the record. <u>Selian</u>, 708 F.3d at 418. Because the Appeals Council failed to do so, remand is warranted.

25. Plaintiff also argues that the ALJ erred in not finding her fibromyalgia to be a severe impairment at step 2. Because remand is warranted on other grounds, this Court will not consider this argument here. On remand, the ALJ may address this issue as warranted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 5) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      May 27, 2021
            Buffalo, New York

                                            s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Judge